06-4996-cv
Ricci v. DeStefano

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

_____

August Term, 2007

(Argued: December 10, 2007          Decided: June 9, 2008

En Banc Concurrence Decided: June 13, 2008)

Docket No. 06-4996-cv

_____

FRANK RICCI, MICHAEL BLATCHLEY, GREG BOIVIN, GARY CARBONE, MICHAEL
CHRISTOFORO, RYAN DIVITO, STEVEN DURAND, WILLIAM GAMBARDELLA,
BRIAN  JOOSS, JAMES  KOTTAGE, MATTHEW MARCARELLI, THOMAS J. MICHAELS,
SEAN  PATTON, CHRISTOPHER PARKER, EDWARD  RIORDON, KEVIN  ROXBEE,
TIMOTHY SCANLON, BENJAMIN VARGAS, JOHN VENDETTO and MARK VENDETTO,

*Plaintiffs-Appellants*,

v.

JOHN DESTEFANO, KAREN DUBOIS-WALTON, THOMAS UDE JR., TINA BURGETT,
BOISE KIMBER, MALCOLM WEBER, ZELMA TIRADO and CITY OF NEW HAVEN,

*Defendant-Appellees*.

_____

CALABRESI, *Circuit Judge*, concurring in the denial of rehearing *en banc*:

I join entirely Judge Parker's opinion concurring in the denial of a rehearing *en banc*.  I also join fully Judge Katzmann's opinion because, as he points out, going *en banc* is unnecessary as all that is involved in this case has already been described in the filed opinions.  I write today to

emphasize one reason that, I believe, makes it particularly inappropriate for us to exercise our purely discretionary power to review this case *en banc*.

The question of whether a municipality incurs liability when, motivated only by a desire to comply with federal anti-discrimination law, it takes race-neutral actions that have racially significant consequences, is undoubtedly an interesting one.[1] To reach that question one must, however, first examine whether the municipality's proffered desire to comply with federal law is in good faith and not a pretext. After that, we would normally ask whether that asserted desire, although in good faith, is not also in part motivated by other, racial, considerations. In this case, the municipality claimed that its actions were grounded solely in the desire to comply with federal law. The plaintiffs alleged instead that this was not the real reason for the city's actions, and asserted that the city had other less salubrious, and directly racial-political, reasons for what it did.

The district court and the panel readily rejected the notion that the city's stated reason was just a pretext. But neither court went on to consider whether the city was influenced by mixed motives. And that is why Judge Cabranes, in his dissent from the denial of *en banc* review, suggests that, since the plaintiffs alleged that their race motivated the defendants' decision, the district court should have undertaken such a mixed motive analysis. He contends, that is, that the courts should have examined the situation as one in which a legitimate motive may have combined with an improper motive to bring about the challenged action. *See Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). He would be precisely right . . . except for the fact that that type of analysis is not

---

[1] For an exceptionally thoughtful and thorough discussion of this area, see Richard A. Primus, *Equal Protection and Disparate Impact: Round 3*, 117 Harv. L. Rev. 494 (2003).

available to us in this case. It is not available for the most traditional of legal reasons. The parties did not present a mixed motive argument to the district court or to the panel.[2]

It is the unavailability of mixed motive analysis that makes this case an especially undesirable one for elective review. The interesting issue the case might present – concerning the obligations of a municipality seeking *only* to comply with the relevant federal anti-discrimination law – is, in the circumstances before us, clouded by the allegations that something more is going on. Given the plaintiffs' failure to argue mixed-motive analysis, those allegations cannot be adequately evaluated. But they nevertheless cannot help but affect how we look at the city's actions. And they may even influence, inappropriately, how we are inclined to rule on the underlying, "interesting" issue.

Difficult issues should be decided only when they must be decided, or when they are truly well presented. When they need not be decided – and rehearing *en banc* is always a matter of choice, not necessity – it is wise to wait until they come up in a manner that helps, rather than hinders, clarity of thought. That is not so in this case.

For this reason too, I concur in the denial of rehearing *en banc*.

---

[2] It is unavailable, that is, unless we reach out and consider a legal theory that the parties have eschewed. Sometimes – for example, in matters of life and death – such a reaching out may be appropriate. But generally, and specifically in this case, it is not.